**UNITED STATES of America,**
**Appellee,**

v.

**Myrisa V. LEWIS, Defendant–**
**Appellant.**

**Docket No. 04–4105–CR.**

United States Court of Appeals,
Second Circuit.

Argued: March 31, 2005.

Decided: Sept. 15, 2005.

Pablo Quiñones, Assistant United States Attorney for the Southern District of New York (David N. Kelley, United States Attorney, Marc Litt, Assistant United States Attorney, of counsel), for Appellee.

Edward S. Zas, Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Defendant–Appellant.

Before: FEINBERG, SACK, and KATZMANN, Circuit Judges.

## BACKGROUND

SACK, Circuit Judge.

In 1997, the defendant-appellant, Myrisa V. Lewis, pleaded guilty to, and was convicted in the United States District Court for the District of South Carolina (C. Weston Houck, *Chief Judge*) of, one count of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On June 19, 1997, she was sentenced principally to seventy months' imprisonment to be followed by five years' supervised release, with the special condition that she participate in a program of drug treatment, which might include test-ing, approved by the United States Probation Office.

Lewis began her term of supervised release on December 21, 2001. She then moved to New York City, where she was supervised by the United States Probation Office for the Southern District of New York. In May 2002, jurisdiction over her case was transferred to the United States District Court for the Southern District of New York, where it was assigned to the Hon. Deborah A. Batts. Lewis received outpatient counseling at a substance abuse program provided by A.R.E.B.A. Casriel Institute by contract with the Probation Office.

In February 2003, the Probation Office sent Judge Batts a "Non–Compliance Summary" advising the court that Lewis had tested positive for cocaine use eight times between August and December, 2002. The Office nonetheless requested that no additional action be taken with respect to Lewis in order to allow her to continue to seek to benefit from the outpatient counseling services. The district court agreed to take no action at that time.

On April 5, 2004, however, the Probation Office filed a "Request for Court Action" and a "Report for a Warrant" charging Lewis with repeated violations of three conditions of her supervised release. The Office alleged that Lewis had: 1) used cocaine on four occasions between March 3, 2003, and January 13, 2004; 2) failed to report to her probation officer on fifteen occasions between December 30, 2003, and March 30, 2004; and 3) failed to abide by court-ordered treatment in that she failed to attend outpatient counseling sessions on nine occasions between January 8, 2004, and March 4, 2004.

The Probation Office advised the district court that the applicable policy statements under the United States Sentencing Guidelines ("U.S.S.G." or "Guide-

lines") suggested a term of imprisonment of three to nine months because Lewis's supervised release violations were "Grade C" and she had a criminal history category of I. In addition, the Office asserted that because Lewis was originally convicted of a Class A felony, the maximum statutory term of imprisonment that she could be required to serve for her supervised release violations was five years. Finally, the Office noted that, under 18 U.S.C. § 3583(g), the district court is required to revoke a supervised release term and require that the defendant serve a term of imprisonment not to exceed the statutory maximum if a defendant is found to have possessed a controlled substance. "[U]se of narcotics amounts to possession thereof for the purposes of § 3583(g)." *United States v. Wirth*, 250 F.3d 165, 170 (2d Cir.2001) (per curiam). The Office recommended that Lewis's supervised release term be revoked and that she receive a sentence of imprisonment within the three-to-nine-month range recommended by a policy statement contained in the Guidelines.

On July 12, 2004, Lewis pleaded guilty to the three charges of violating her supervised release. Her lawyer had previously advised the district court that Lewis intended to plead guilty and had urged the court to sentence her to three months' imprisonment; the government made no sentencing recommendation. But, in addition to revoking Lewis's supervised release term, the court sentenced her principally to a term of imprisonment of twenty-four months, stating:

> The Court has considered the factors set forth in 18 United States Code Section 3583(e) and Section 3553(a)(4) and (5), the applicable Sentencing Guidelines and policy statements, and the applicable holding of *United States v. W[i]rth,* 250 F.3d 165 (2d Cir.2001), which states that 18 United States Code, Section 3583(g) mandates revocation of supervised release and imposition of a term of imprisonment. However, a defendant may be eligible to avoid a sentence of imprisonment, pursuant to 18 United States Code Section 3583(d), if the Court determines that a substance abuse prevention program is available and appropriate. The defendant's consistently poor adjustment history in such programs does not support assigning her to one now. For violation of your supervised release conditions, Ms. Lewis, I hereby sentence you to a term of imprisonment of 24 months. Upon completion of said term of imprisonment, the defendant is placed on supervised release for a period of three years under the applicable standard conditions and previously imposed special conditions.

Transcript of Proceedings before District Court on July 12, 2004, *United States v. Lewis,* No. 02 CR 495 (S.D.N.Y.2004) ("Hr'g Tr."), at 4–5. Lewis did not at that time object to her sentence or to the district court's statement in open court regarding her sentence. In the written judgment, filed on July 26, 2004, the court stated, without explanation, that it thereby imposed a twenty-four-month sentence of imprisonment.[1]

## DISCUSSION

18 U.S.C. § 3553(c)(2) provides in pertinent part:

**§ 3553. Imposition of a sentence**

. . . .

**(c) Statement of reasons for imposing a sentence.**—The court, at the time of sentencing, shall state in open court the

---

1. The written judgment refers to the offense as being a "violation of probation" although it apparently meant to refer to a violation of supervised release.

reasons for its imposition of the particular sentence, and, if the sentence—

. . . .

    (2) is not of the kind, or is outside the range, described in subsection (a)(4) [which refers to the Sentencing Guidelines or, in the case of a violation of probation or supervised release, to policy statements issued by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3) ], the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment

    . . . .

*Id.* (boldface type in original). Lewis appeals her sentence, asserting that a remand to the district court is required because the sentence was imposed "in violation of law" and is "plainly unreasonable" insofar as the court violated section 3553(c)(2) by failing to explain why it imposed a sentence that exceeded the range recommended by the policy statements in the Sentencing Guidelines and by the Probation Office.

## I. Standard of Review

After *United States v. Booker*, — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the standard for reviewing a sentence for which there are applicable policy statements but no applicable guidelines, such as the sentence imposed for violation of supervised release in this case, is that of "reasonableness." *See United States v. Fleming*, 397 F.3d 95, 99 (2d Cir.2005). This replaces the previous standard of "plainly unreasonable," *id.,* to which the defendant and the government understandably refer. Lewis thus argues that the sentence is "plainly unreasonable" because the court failed to comply with section 3553(c)(2). Thus the claim on appeal pertains only to whether the district court, in imposing a sentence on Lewis, fulfilled the requirements of that statutory provision. This is an issue that we address by looking to the sentencing hearing transcript and the written judgment. *See United States v. Dos Reis*, 369 F.3d 143, 150 (2d Cir.2004).

## II. "Plain Error" Analysis

### A. "Plain Error" in the Sentencing Context

Lewis did not raise her 18 U.S.C. § 3553(c) objection at the time of her sentencing. It is unclear whether we therefore review her claim for plain error, *see United States v. Molina*, 356 F.3d 269, 277 (2d Cir.2004), 356 F.3d 269, 277 (2d Cir. 2004) (reviewing for plain error the issue of the district court's lack of compliance with section § 3553(c) because the defendant did not object on that ground at the time of sentencing), under a less stringent standard, *United States v. Sofsky*, 287 F.3d 122, 125 (2d Cir.2002) (noting that "in the sentencing context there are circumstances that permit us to relax the otherwise rigorous standards of plain error review to correct sentencing errors"), *cert. denied*, 537 U.S. 1167, 123 S.Ct. 981, 154 L.Ed.2d 907 (2003), or whether we need not apply the four-part plain-error analysis at all, *United States v. Zackson*, 6 F.3d 911, 923–24 (2d Cir.1993) (holding that a sentence imposed in violation of § 3553(c)(1) is "a sentence imposed in violation of law" and must therefore "be vacated unless the district court provides a statement of reasons"). Because we conclude that remand is necessary even under the stringent, four-part plain-error standard, we need not resolve this issue here.

### B. The "Statement of Reasons"

Under 18 U.S.C. § 3583(e), a sentencing court "may, after considering" a variety of

factors set forth in § 3553(a)—including any relevant policy statements issued by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3), *see* 18 U.S.C. § 3553(a)(4)(B)—revoke a defendant's term of supervised release and require the defendant to serve a term of imprisonment, if the court first determines that the defendant violated the terms of his or her supervised release. A court must revoke a defendant's supervised release in some circumstances, including when the defendant possesses a controlled substance or tests positive for an illegal controlled substance more than three times over the course of a year. *See* 18 U.S.C. § 3583(g). Pursuant to 18 U.S.C. § 3583(d), however, a court may "carve out an exception to § 3583(g) where a substance abuse program is available and appropriate." *Wirth*, 250 F.3d at 170.

If a court revokes a defendant's term of supervised release under either 18 U.S.C. §§ 3583(e) or (g), the court may not impose a term of imprisonment greater than five years if the underlying offense that led to the supervised release term was a Class A felony. By comparison, the maximum is three years for a Class B felony, two years for a Class C or D felony, and one year in all other cases. *See* 18 U.S.C. §§ 3583(e)(3), 3583(g). And, pursuant to 28 U.S.C. § 994(a)(3), the Sentencing Commission has issued policy statements about the revocation of supervised release that classify violations, *see* U.S.S.G. § 7B1.1, and recommend corresponding terms of imprisonment, *see* U.S.S.G. § 7B1.4; *see also Fleming*, 397 F.3d at 98. For a defendant such as Lewis, who committed a Class A felony and then a Grade C supervised release violation and had a criminal history category of I, the recommended imprisonment range is three to nine months, with a statutory maximum of five years. *See* U.S.S.G. § 7B1.4 (table); 18 U.S.C. § 3583(e)(3).

■ And,

[a]lthough a district court, in sentencing a defendant for a violation of supervised release, "is directed to consider the nonbinding policy statements found in Chapter Seven of the Guidelines Manual [including section 7B1.4]," the court ultimately has "broad discretion to revoke its previous sentence and impose a term of imprisonment" up to the statutory maximum.

*United States v. Pelensky*, 129 F.3d 63, 69 (2d Cir.1997) (quoting *United States v. Sweeney*, 90 F.3d 55, 57 (2d Cir.1996)).

*C. "Statement of Reasons" when the District Court Departs*

■ 18 U.S.C. § 3553(c), which *Booker* "left unimpaired," *see United States v. Crosby*, 397 F.3d 103, 116 (2d Cir.2005), provides, as we have noted, that a district court, "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." The section further provides that "if the sentence ... is not of the kind, or is outside the range, described in subsection (a)(4)," which refers to the Sentencing Guidelines or, in the case of a violation of probation or supervised release, policy statements issued by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3), the sentencing court must state "the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment." 18 U.S.C. § 3553(c)(2); *see also United States v. Cervantes*, 878 F.2d 50, 54 (2d Cir.1989) (noting that "Congress intended that the most detailed explanation be set forth for a sentence beyond the boundary of the Guideline range"). While "we do not require

sentencing judges to incant the specific language used in the Guidelines[,][i]t is necessary ... that the court clearly ... specify its reasons for" departing. *Id.* at 54 (internal quotation marks and citation omitted).

Section 3553(c)(2) applies to the sentencing in this case, as the government concedes, because, *inter alia,* the section refers to sentences outside the ranges that are suggested by the Sentencing Commission through applicable policy statements for violations of supervised release. *See* 18 U.S.C. §§ 3553(c)(2), 3553(a)(4)(B). Lewis's was just such a sentence.

■ We think, however, that a court's statement of its reasons for going beyond non-binding *policy statements* in imposing a sentence after revoking a defendant's supervised release term need not be as specific as has been required when courts departed from *guidelines* that were, before *Booker,* considered to be mandatory. Indeed, regarding 18 U.S.C. § 3583(e)'s requirement that courts "consider" the Sentencing Commission's relevant policy statements in imposing a sentence for violation of supervised release, some of our prior cases have "take[n] a deferential approach and refrain[ed] from imposing any rigorous requirement of specific articulation by the sentencing judge." *Fleming,* 397 F.3d at 99; *see also Pelensky,* 129 F.3d at 69 (noting that "[b]ecause Chapter Seven policy statements are merely advisory and non-binding ... 'the district court need not make the explicit, detailed findings required when it departs upward from a binding guideline'") (quoting *United States v. Anderson,* 15 F.3d 278, 284 (2d Cir.1994)) (internal quotation marks and citations omitted). Insofar as a court's "consideration" of the relevant policy statements, and its findings upon which it departed from the range recommended by those statements, need not be as explicit in

this situation, it seems to us to follow that its statement of reasons need not be as specific.

## D. The District Court's Statement of Reasons

■ In this case, the district court stated that it had "considered" both the relevant policy statements and the applicable statutory provisions. Hr'g Tr. at 4. The court then observed that a defendant might be eligible to avoid a sentence of imprisonment if the court determined that a substance abuse prevention program was available and appropriate. *See id.* at 4–5. But, the court said, "[t]he defendant's consistently poor adjustment history in such programs does not support assigning her to one now." *Id.* at 5. The court then stated, without elaboration, that it was sentencing Lewis to a term of imprisonment of twenty-four months for the violation of her supervised release conditions. Thus, although the court did state a reason for sentencing Lewis to a term of imprisonment rather than requiring that she participate or continue to participate in a substance abuse prevention program, the court did not give any reason for imposing a twenty-four-month imprisonment term rather than one within the range suggested by the applicable policy statements issued by the Sentencing Commission— which range was also recommended by the Probation Office. The written judgment, too, was bare of any such explanation.

Stating no reasons at all "plainly" falls short of the requirement to state reasons that is set forth in § 3553(c), no matter what the required level of "specificity" may be. *Cf. Molina,* 356 F.3d at 276 (determining that the district court's failure to state reasons for a sentence enhancement it imposed "did not satisfy th[e] unambiguous mandate" of 18 U.S.C. § 3553(c) to " 'state in open court the rea-

sons for the imposition of the particular sentence' "). Because we conclude that the district court did not comply with the general provisions of § 3553(c) (requiring that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence"), let alone the specific requirements of § 3553(c)(2) regarding departures from recommended sentencing ranges, we conclude that the court committed an error, and that the error was plain.

■ The government contends that the district court committed no error because the record here is sufficiently developed to permit adequate appellate review and to assess "whether the sentence imposed was 'plainly unreasonable.' "[2] Gov't Br. at 15. The government bases this argument on our statement in *Pelensky* that "[i]n the absence of an applicable guideline, we will uphold the district court's sentence if '(1) the district court considered the applicable policy statements; (2) the sentence is within the statutory maximum; and (3) the sentence is reasonable.' " *Pelensky*, 129 F.3d at 69 (quoting *Anderson*, 15 F.3d at 284). But *Pelensky* did not involve an assertion that the sentencing court failed to comply with the statement-of-reasons requirements of 18 U.S.C. § 3553(c). And in *Pelensky*, the district court had provided several reasons for imposing the statutory maximum rather than the recommended Guideline range, including the court's determination that " 'the best place

for Mr. Pelensky to clean up and to remain clean for a period of time is prison' " and that the defendant had " 'shown nothing but consistent disregard for opportunities he ha[d] been given.' " *Id.* at 70. As we have noted in the context of sentences imposed as a result of the mandatory application of the Guidelines pursuant to 18 U.S.C. § 3553(b)(1), which was excised by *Booker*, "[a] sentence explicitly based upon a non-existent statutory provision, even if 'reasonable' in length, constitutes error (although possibly 'harmless error' or not 'plain error'), because of the unlawful method by which it was selected." *Crosby*, 397 F.3d at 114–15. Similarly, a sentence imposed without complying with the requirements of the still-applicable provision of 18 U.S.C. § 3553(c)(2) constitutes error, even assuming that its length is reasonable.[3]

### E. The Remainder of the "Plain Error" Inquiry

Having decided that there was "error" that was "plain," to complete our inquiry, we must determine whether the error "affect[ed][the] substantial rights" of the defendant, and whether it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 466–67, 117 S.Ct. 1544 (internal quotation marks and citation omitted). For analytical purposes, we address these issues in reverse order.

---

**2.** In particular, the government points to the facts that: Lewis tested positive twelve times for drugs between August 2002 and January 2004; Lewis failed to report to her probation officer fifteen times in a three-month period; and Lewis failed to complete a court-mandated outpatient drug treatment program.

**3.** We stated in *Crosby* that "[i]f a sentencing judge committed a procedural error by selecting a sentence in violation of applicable law, and that error is not harmless and is properly

preserved or available for review under plain error analysis, the sentence will not be found reasonable." *Crosby*, 397 F.3d at 114 (citation omitted). The government is arguing, in effect, that what might be termed the "procedural" error of imposing a sentence without complying with the requirements of 18 U.S.C. § 3553(c) is not an error available for review under plain error analysis if the sentence *itself* is reasonable. But this inverts the logic of the inquiry.

### 1. Fairness, Integrity, and Public Reputation of Judicial Proceedings.

■ "Though a sentencing judge retains discretion ... he must demonstrate that he has thoughtfully discharged his statutory obligation [under § 3553(c)], with a degree of care appropriate to the severity of the punishment ultimately selected." *United States v. Chartier*, 933 F.2d 111, 117 (2d Cir.1991). In thus "enabl[ing] the public to learn why [the] defendant received a particular sentence," *United States v. Alcantara*, 396 F.3d 189, 206 (2d Cir.2005) (quoting *Molina*, 356 F.3d at 277), section 3553(c) has implications beyond the immediate rights of criminal defendants or the government, or the effective conduct of particular criminal proceedings. It tends to instill understanding of, trust in, and respect for the court and its proceedings on the part both of those who are themselves parties to the proceeding and those who are not. To paraphrase *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), people in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they have insufficient information to understand. When a statement of reasons is given, there is at least an opportunity for understanding both the system in general and its workings in the particular case. We have held, for similar reasons, that the public has a presumptive right of access to sentencing proceedings. *Alcantara*, 396 F.3d at 196. The requirement that a statement of reasons be given is hardly, as the government would have it, a mere "formalism." *See* Gov't Br. at 15–16 n.*

We conclude, then, that a sentencing court's failure to comply with § 3553(c)(2) affects the fairness, integrity, and public reputation of judicial proceedings.

### 2. Lewis's "Substantial Rights"

The third prong of the "plain error" test is whether the asserted error "affected substantial rights." In addressing the issue, we begin by noting the concrete purposes for requiring sentencing courts to make "statements of reasons" under rule 3553(c). By informing the defendant of the basis for the sentence, he or she may well become better able effectively to pursue an appeal asserting that the sentence is unreasonable. By similarly informing the Court of Appeals as to the reasons for the sentence, we may well become better able to hear and determine the appeal effectively. *See Molina*, 356 F.3d at 277 (noting that one of the goals of enacting § 3553(c) was to "permit meaningful appellate review"); *accord Cervantes*, 878 F.2d at 54.[4] Section 3553(c) bestows on defendants the right to argue more effectively that—and enables us to decide more effectively whether—a sentence is "reasonable." This right seems to us clearly to be "substantial."[5]

---

4. An additional, related function of the statement of reasons is "to guide probation officers and prison officials in developing a program to meet defendant's needs." *Molina*, 356 F.3d at 277.

5. In *Molina*, to be sure, we determined that although the district court erred in failing to comply with § 3553(c)'s requirement that it state in open court its reasons for imposing a particular sentence, the "plain error" standard was not met because the district court adopted the findings of the defendant's Pre-Sentence Report in its written judgment and, in addition, facts elicited at the sentencing hearing supported the court's enhancement of the defendant's sentence. *See Molina*, 356 F.3d at 276–78. In this case, by contrast, there is an insufficient basis for Lewis or for us to determine why the district court did what it did. We therefore conclude that the absence of a statement of reasons affected Lewis's substantial rights.

We recognize, though, that as the Supreme Court observed in *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), the phrase "affected substantial rights,"

> usually means that the [plain] error "must have affected the outcome of the district court proceedings." *Olano,* [507 U.S.] at 734, 113 S.Ct. at 1777. Respondents argue that an indictment error falls within the "limited class" of "structural errors," *Johnson,* [520 U.S.] at 468–469, 117 S.Ct. at 1549–50, that "can be corrected regardless of their effect on the outcome," *Olano,* [507 U.S.] at 735, 113 S.Ct. at 1778.

*Id.* at 632, 122 S.Ct. 1781.[6] But we do not think that this appeal—whether couched as dealing with "structural error" or otherwise—falls within the category of the "usual" case. The "substantial rights" affected by a court's failure to comply with section 3553(c) are of a somewhat different nature from those with which we typically deal.

First, as we suggested in *Alcantara,* 396 F.3d at 196–99, the First Amendment guarantees of a public trial extend to defendants' sentencing proceedings. A violation of section 3553(c) is thus at least akin to the deprivation of the defendant's right to a public trial, which the Supreme Court has enumerated as one of the limited class of "structural errors" for purposes of plain error analysis. *See Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (citing *Waller v. Georgia,* 467 U.S. 39, 49, n. 9, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (discussing Sixth Amendment right to public trial)).[7]

Second, in the sentencing context "there are circumstances that permit us to relax the otherwise rigorous standards of plain error review to correct sentencing errors." *Sofsky,* 287 F.3d at 125. Because "noticing unobjected to errors that occur at trial precipitates an entire new trial that could have been avoided by a timely objection, whereas correcting a sentencing error results in, at most, only a remand for resentencing," *id.,* we need not be concerned that a generous reading of the "statements of reasons" requirement at sentencing will adversely interfere with trial proceedings or affect their finality.

And third, it seems unlikely that a court's failure to state its reasons for imposing a particular sentence would except in the rarest of cases "affect" the sentence imposed, in the sense that a court would impose a materially different sentence if required to state its reasons.[8] Therefore, if an error affecting "substantial rights" in the sentencing context is understood only as an error that materially affected the

---

6. Having stated the question, the *Cotton* court avoided answering it by concluding that, in any event, the respondents had not prevailed on the fourth prong of the "plain error" test. *Cotton,* 535 U.S. at 632–33, 122 S.Ct. 1781 ("[W]e need not resolve whether respondents satisfy this element of the plain-error inquiry, because even assuming respondents' substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.").

7. In *Alcantara,* we were able to avoid the question of whether a violation of 3553(c) was alone enough, applying the plain error test, to require a remand for resentencing. *See Alcantara,* 396 F.3d at 207 ("Because we are remanding [the appellant's] case for resentencing under our supervisory powers, we do not decide whether the violation of 18 U.S.C. § 3553(c)'s open court requirement would alone provide a basis for resentencing in [his] case.")

8. Indeed, in this case, the government does argue that "the [statutory] sentencing range on remand would be identical to that considered by Judge Batts in the first instance (up to five years), and there is no evidence that Judge Batts would sentence Lewis any differently were the case remanded." Gov't Br. at 17.

sentence that was imposed, the error of failure to comply with the requirements of section 3553(c) would virtually never be "plain." Even if preserved, such an error would be left uncorrected on appeal because the error would appear virtually always to be harmless (ignoring for the moment that the burden of proof is then on the government rather than the defendant). *See* Fed.R.Crim.P. 52(a) (stating that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"). We therefore think that treatment of section 3553(c) error as "plain error" which may be corrected on appeal will help maintain the provisions of section 3553(c) as truly mandatory, as they are apparently intended to be.[9]

### III. Remand

In light of our finding that the court's failure to state its specific reasons met the plain error analysis and the possibility that a statement of reasons would provide Lewis with a platform upon which to build an argument that her sentence is unreasonable, we vacate the sentence and remand the case to the district court. The court should resentence the defendant stating its reasons in open court and in the written judgment in compliance with 18 U.S.C. § 3553(c)(2).

### CONCLUSION

For the foregoing reasons, we remand the case to the district court with instructions to vacate the sentence and to conduct resentencing proceedings that fully com-

port with the requirements of 18 U.S.C. § 3553(c).

---

**9.** *Cf. United States v. Canady,* 126 F.3d 352, 364 (2d Cir.1997), *cert. denied,* 522 U.S. 1134, 118 S.Ct. 1092, 140 L.Ed.2d 148 (1998) ("[I]f we were to hold that the error was not structural and thus subject to harmless error analysis, it would almost always be held to be harmless. In this way, the right would become a right in name only, since its denial would be without consequence."). *Contra United States v. Izaguirre–Losoya,* 219 F.3d 437, 442 (5th Cir.2000), *cert. denied,* 531 U.S. 1097, 121 S.Ct. 827, 148 L.Ed.2d 709 (2001) (holding that "remand to comply with the dictates of § 3553(c) would be an empty formality and waste of judicial resources").